# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JANE DOE, | : | |
| | : | |
| | : | |
| Petitioner, | : | No. 4:19-cv-04112 |
| v. | : | |
| | : | |
| MACQUARIE INVESTMENT | : | |
| MANAGEMENT BUSINESS TRUST, | : | |
| | : | |
| Respondent. | : | |
| | : | |

## RESPONDENT'S MOTION (i) TO DISMISS THE PETITION TO COMPEL ARBITRATION FOR FAILURE TO STATE A CLAIM, (ii) TO STRIKE CERTAIN ALLEGATIONS OF THE PETITION, AND (iii) FOR SANCTIONS

Linda C. Schoonmaker
Texas Bar No. 17806300
lschoonmaker@seyfarth.com
Brian A. Wadsworth
Texas Bar No. 24075231
bawadsworth@seyfarth.com
SEYFARTH SHAW, LLP
700 Milam Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 225-2300
Facsimile: (713) 225-2340

OF COUNSEL:

Ellen Rosen Rogoff, Esq. (pro hac vice application pending)
Jeffrey A. Lutsky, Esq. (pro hac vice application pending)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA  19107-7018
Telephone: (215)56-8000
Facsimile: (215) 564-8120

## <u>TABLE OF CONTENTS</u>

I.     FACTUAL BACKGROUND ...............................................................................3

     A.    THE PARTIES .............................................................................................3

     B.    THE PERTINENT ARBITRATION AGREEMENT ...........................................3

     C.    THE ARBITRATION PROCEEDING AND APPOINTMENT OF ARBITRATORS ...................4

     D.    THE IMPERTINENT, SCANDALOUS AND IMMATERIAL ALLEGATIONS
         OF THE PETITION ......................................................................................5

II.    ARGUMENT .................................................................................................6

     A.    THE PETITION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ...................6

     B.    PARAGRAPHS 10 AND 13 THROUGH 20 AND EXHIBIT A SHOULD BE
         STRICKEN FROM THE PETITION ..............................................................10

     C.    MACQUARIE IS ENTITLED TO RECOVER ITS COSTS AND ATTORNEYS'
         FEES IN CONNECTION WITH THIS MOTION ..............................................14

III.   CONCLUSION .............................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Adam Techs. Int'l S.A. de C.V. v. Sutherland Global Services, Inc.,
    729 F.3d 443 (5th Cir. 2013) ....................................................................................9

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)..................................................................................................7

Augustus v. Bd. Of Pub. Instruction of Escambia County, Fla.,
    306 F.2d 862 (5th Cir. 1962) ............................................................................ 10-11

Avic International, USA v. Tang Energy Group, Ltd.,
    614 F. App'x 218 (5th Cir. 2015) ...................................................................... 9-10

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)..................................................................................................6

Bianco v. Globus Med., Inc.,
    No. 2:12-CV-00147-WCB, 2014 WL 3422000 (E.D. Tex. July 14, 2014)............................10

Boltex Mfg. Co., L.P. v. Ulma Forja, S. Coop,
    No. CV H-17-1400, 2018 WL 6622839 (S.D. Tex. Nov. 28, 2018), report and
    recommendation adopted sub nom. Boltex Mfg. Co., L.P. v. Ulma Piping
    USA Corp., No. 4:17-CV-1400, 2018 WL 6618022 (S.D. Tex. Dec. 17, 2018)....................11

Brook v. Peak Int'l, Ltd.,
    294 F.3d 668 (5th Cir. 2002) ...................................................................................9

Dishner v. Universal Health Servs., Inc.,
    No. 3:17-CV-3321-D, 2018 WL 1617844 (N.D. Tex. Apr. 4, 2018)......................................11

Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.,
    No. 2:15-CV-1202-WCB, 2017 WL 434207 (E.D. Tex. Feb. 1, 2017) .................................10

Green Tree Fin. Corp. v. Bazzle,
    539 U.S. 444 (2003)..................................................................................................8

Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.,
    304 F.3d 476 (5th Cir. 2002) .............................................................................. 7-8

Hooters of Am., Inc. v. Phillips,
    173 F.3d 933 (4th Cir. 1999) .................................................................................10

In re Smith,
    656 F.2d 1101 (5th Cir. 1981) ...............................................................................10

John Wiley & Sons, Inc. v. Livingston,
    376 U.S. 543 (1964)............................................................................................8

Johnson v. Ashmore,
    681 F. A'ppx 345 (5th Cir. 2017) ....................................................................11

Jones v. Greninger,
    188 F.3d 322 (5th Cir. 1999) ...........................................................................7

Marceaux v. Lafayette City Parish Consolidated Government,
    14 F. Supp. 3d 760 (W.D. La. 2014), aff'd, 614 F. A'ppx 705 (5th Cir. 2015) .....................11

Nixon v. Warner Commc'ns, Inc.,
    435 U.S. 589 (1978)........................................................................................10

Oteeva, LP v. X-Concepts LLC,
    253 F. App'x 349 (5th Cir. 2007) ...................................................................13

Ratliff v. Stewart,
    508 F.3d 225 (5th Cir. 2007) .........................................................................14

Sheshtawy v. Conservative Club of Houston, Inc.,
    No. 4:16-CV-733, 2016 WL 10880233 (S.D. Tex. Dec. 14, 2016)....................14

Smith v. Rush Retail Centers, Inc.
    360 F.3d 504 (5th Cir. 2004) ................................................................... 12-13

In re Smith,
    656 F.2d 1101 (5th Cir. 1981) .......................................................................11

Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.,
    38 F.3d 1414 (5th Cir. 1994) .........................................................................14

**Statutes**

9 U.S.C. §4.........................................................................................7, 10, 13

28 U.S.C. § 1332(a) ..................................................................................... 12-13

28 U.S.C. § 1927..............................................................................................14

**Other Authorities**

Fed. R. Civ. P. 5.2(d) ....................................................................................10

Fed. R. Civ. P. 12(b)(6)................................................................................ 1, 6-7

Fed. R. Civ. P. 12(f)....................................................................................1, 10

Respondent, Macquarie Investment Management Advisers ("Macquarie") (incorrectly identified as Macquarie Investment Management Business Trust in the caption), respectfully moves to dismiss the Petition to Compel Arbitration pursuant to Federal Rule 12(b)(6) because it fails to set forth an arbitration-related claim that can be decided by this Court. Macquarie further moves in the alternative, pursuant to Federal Rule 12(f), to strike certain allegations of the Petition, as well as for sanctions.  In support of its motion, Macquarie asserts the following:

- The Petition requests relief on a very narrow issue:  the American Arbitration Association ("AAA") arbitrator selection process.  See Petition, at ¶¶ 35-37.  Significantly, the AAA already has reviewed this issue twice, and twice the AAA concluded that Petitioner's complaint was without merit.  See Exhibit 1.  To the extent that Petitioner disagrees with the AAA's selection and asks this Court to review that decision, her dispute is with the AAA, not Macquarie.

- Significantly, Petitioner acknowledges that the underlying employment dispute must be arbitrated.  Since January 2019, Macquarie has worked diligently and in good faith to move the arbitration process forward so that Petitioner's dispute with Macquarie may be heard. However, Petitioner, who is apparently more interested in finding a way to embarrass Macquarie publicly than seeing her dispute resolved, filed a Petition that is prohibited both by the very arbitration agreement Petitioner seeks to enforce here (which requires that all disputes between the parties be adjudicated via "strictly confidential" arbitration) and Fifth Circuit case law (prohibiting courts from entertaining challenges to the arbitrator selection process before the arbitration has concluded).  As discussed below, Macquarie respectfully submits that this Court cannot hear this dispute, and the Petition should be dismissed.

•       Alternatively, Paragraphs 10 and 13 through 20 of the Petition should be stricken because they include impertinent, scandalous, and wholly unnecessary allegations about Petitioner's treatment during her employment which are completely irrelevant to the narrow legal issue raised over the selection of an arbitrator by the AAA.  Petitioner's employment agreement (which includes sensitive employment terms and compensation provisions) is also immaterial and confidential.  In the event the Petition is not dismissed in its entirety, Macquarie respectfully submits that Petitioner should be required to file an amended petition without the offending Paragraphs and without attaching the employment agreement as an exhibit.

•       This Petition was filed for an improper purpose—to assert numerous and plainly immaterial but inflammatory allegations about Petitioner's employment with Macquarie in order to generate public attention and embarrass Macquarie.  Petitioner could have—and should have—proceeded in this matter without these irrelevant allegations which are wholly unnecessary for the Court to determine the relief requested by the Petition.  When Petitioner's counsel informed Macquarie's counsel that Petitioner intended to file under pseudonym because of concerns that Macquarie would raise certain factual issues about Petitioner, Macquarie's counsel suggested that both parties refer to the AAA proceeding only as an "employment dispute" to protect the privacy interests of both parties and to uphold the strict confidentiality provisions of their mutual arbitration agreement.  See Exhibit 2.  Petitioner flatly rejected that proposal, even though she now asserts the very same privacy concerns as the reason for filing under pseudonym.  See Exhibit 3.  Unfortunately, Macquarie has no such option available to it. Indeed, through her filing, Petitioner has already achieved her improper purpose, as national and international media have already reported on her allegations (including quoting extensively from Paragraphs 10 and 13 through 20 of the Petition).  Macquarie vigorously disputes Petitioner's

underlying claims, and is prepared to defend them in the appropriate forum, but her

sensationalized allegations have garnered global media attention and destroyed the

confidentiality of the arbitration process that both parties agreed to follow.  Because Petitioner's

counsel's actions were tactically driven, in bad faith and without merit, Macquarie is also

requesting sanctions against Petitioner's counsel for having to file this Motion.

## I.     FACTUAL BACKGROUND

### A.     The Parties

Petitioner is a former employee of Macquarie and a resident of Texas.  See

Petition, at ¶ 10.  Macquarie is a series of a Delaware statutory trust with its principal place of

business in Philadelphia, Pennsylvania.  It is a part of the Macquarie Group, a global and

diversified financial group with headquarters in Sydney Australia.

### B.     The Pertinent Arbitration Agreement

In 2016, Petitioner signed an employment agreement with Macquarie that

included an Arbitration Agreement.  See Exhibit 4.  The Arbitration Agreement requires the

parties to arbitrate "any claim that could be asserted in court or before an administrative agency,"

and it precludes the parties from "bringing or raising in court or another forum any dispute that

was or could have been" arbitrated.  See id. at p. 10.  Pursuant to the Arbitration Agreement, the

arbitration is to be conducted under the AAA Rules and Procedures, and it grants the arbitrator

"exclusive authority to resolve any dispute relating to the interpretation, applicability, or

formation of this [Arbitration] Agreement."  See id. at pp. 11-12.  Importantly, the Arbitration

Agreement also expressly provides that "the arbitration shall be *strictly confidential*."  See id. at

p. 11 (emphasis added).

C.     <u>The Arbitration Proceeding and Appointment of Arbitrators</u>

Consistent with the requirements of the Arbitration Agreement, Petitioner filed the underlying employment dispute with the AAA in January 2019.  The AAA appointed an arbitrator, but subsequently disclosed to Macquarie that Petitioner's counsel had retained the arbitrator to mediate another employment dispute that he was handling in late May—during the pendency of the arbitration between Petitioner and Macquarie.  Macquarie objected to the arbitrator's continued involvement, citing to the AAA's Code of Ethics ("[W]hile accepting appointment and while serving as an arbitrator, a person should avoid entering into any business, professional, or personal relationship . . . which is likely to affect impartiality, or which might reasonably create the appearance of partiality.")  <u>See</u> Code of Ethics at I-C.  On May 17, 2019, presumably in agreement with the concerns raised by Macquarie, the AAA properly removed the arbitrator.  <u>See</u> Exhibit 5.  The next arbitrator appointed by the AAA (not mentioned in the Petition) was unable to serve because of conflicts.

The third arbitrator in this matter (and the arbitrator at issue here) was appointed by the AAA in June 2019.  Notably, Petitioner argues only that the AAA failed to select the arbitrator in accordance with the parties' priority rankings.  Petitioner does not challenge— because there is no basis to challenge—the qualifications or impartiality of the current arbitrator appointed by the AAA.  Interestingly, the arbitrator that Petitioner is asking this Court to compel the AAA to appoint—the "sixth person on the ranking list"—***was recommended to the AAA by Petitioner's counsel***.  <u>See</u> Exhibit E to the Petition (in which Petitioner's preferred arbitrator choice states in an email "[t]hanks for suggesting my name for the panel").  Contrary to Petitioner's suggestion, the AAA and Macquarie have acted in accordance with the AAA Rules in not disclosing arbitrator ranking lists.  <u>See</u> Exhibit 1.

As stated above, the current arbitrator has been in place since June 2019.  Since that time, the parties have participated in a preliminary telephonic conference with the arbitrator on July 17, 2019, exchanged discovery requests, and discussed the scheduling of depositions. Macquarie has proceeded with the arbitration process in good faith and with the understanding that Petitioner shared the same desire to proceed with the arbitration to resolve her claims. Nevertheless, several months after the arbitrator's appointment, and with discovery set to close in mid-October, Petitioner submitted a letter to the general counsel of the AAA on September 16, 2019, alleging that the AAA arbitrator selection process was improper.  After careful consideration, including a review of the administrative file by Assistant Vice President Heather Santo of the AAA, the AAA affirmed the arbitrator by letter dated September 30, 2019.  See Exhibit 1.

### D. The Impertinent, Scandalous and Immaterial Allegations of the Petition

Although Macquarie and the AAA vigorously dispute Petitioner's characterization of the arbitration process and Petitioner's underlying employment claims, there is a more troubling aspect of the Petition.  Specifically, Paragraphs 10 and 13 through 20 of the Petition contain blatantly immaterial, impertinent, and scandalous allegations concerning Petitioner's employment with Macquarie.  On their very face, these allegations are wholly irrelevant to the limited focus of Petitioner's purported cause of action – i.e., the AAA arbitration selection process.  These allegations all pre-date Petitioner's filing of the arbitration by at least several months, and often by more than a year.  Obviously, these allegations (as well as the employment agreement, which includes sensitive and confidential employment terms and compensation information) have no connection to the issue of whether the AAA Rules and Procedures were properly followed.

This is especially true of the allegations concerning Petitioner's employment, which have zero bearing on the arbitrator selection process. These allegations serve no legitimate purpose and are clearly intended solely to embarrass Macquarie and promote public scandal. As but one example, Petitioner compares her employment with Macquarie to a Martin Scorsese film, *The Wolf of Wall Street*. <u>See</u> Petition, at ¶ 14. The only purpose these allegations serve is to draw public attention to this dispute, in breach of the clear terms of the parties' arbitration agreement. As Petitioner obviously intended (and previously threatened by her counsel when the claim first arose), several national and even international media publications and outlets have swarmed all over the offending allegations in the Petition.

Simply put, this Petition was filed for an improper motive and purpose—to assert numerous immaterial but inflammatory allegations about Petitioner's employment with Macquarie in order to generate public attention and embarrass Macquarie. This filing is particularly egregious in view of clear Fifth Circuit law that a dispute over the arbitrator selection process can only be brought in a federal court <u>after</u> the arbitration is concluded. Petitioner's counsel has acted vexatiously and in bad faith, and Respondent respectfully suggests that sanctions are warranted.

## II.   <u>ARGUMENT</u>

### A.   <u>The Petition Should be Dismissed for Failure to State a Claim</u>

#### 1.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A plaintiff's obligation to provide the grounds of her entitlement to relief requires more than labels and conclusions, or a formulaic recitation of the elements of a cause of action. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662 (2009).  See also Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999) (when considering a Rule 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims).  As discussed below, since this Court cannot entertain the claim asserted in the Petition at this juncture of the proceedings, Macquarie's motion should be granted.

### 2.  Petitioner has not asserted any claim that can be heard by this Court

Petitioner's reliance on Section 4 of the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* (the "FAA"), for the proposition that this Court can intervene in the underlying arbitration proceeding is misplaced.  See Petition, at ¶ 2.  Interpreting Section 4 of the FAA, the Fifth Circuit has stated explicitly that "jurisdiction by the courts to intervene into the arbitral process prior to issuance of an award is very limited."  Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co., 304 F.3d 476, 486 (5th Cir. 2002).  "The FAA *does not provide* therefore for *any court intervention* prior to issuance of an arbitral award beyond the determination as to whether an agreement to arbitrate exists and enforcement of that agreement by compelled arbitration of claims that fall within the scope of the agreement."  See id. at 487 (emphasis added).

Here, the scope of the dispute is narrow and clearly defined by the Petitioner: Petitioner concedes that she is seeking relief *only* as to the AAA's alleged "fail[ure] to follow the selection procedure outlined in Rule 12 [of the AAA Employment Rules]."  See Petition at ¶ 36. The Petition asserts that the AAA failed to follow its rules in connection with the selection of the arbitrator, and Petitioner wants the Court to order the parties (and presumably the AAA) to proceed with the selection of a new arbitrator.  This is clearly a procedural dispute about one aspect of the arbitration, and it has nothing to do with whether the parties are bound by the Arbitration Agreement here.  (Petitioner concedes that she is.)  Nor is this a "gateway dispute"

about whether the underlying employment claims can be arbitrated.  (They can.)  Accordingly,

this is not an issue that can be decided by the Court at this stage of the proceedings.  See, e.g.,

Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452-53 (2003) (holding that question of whether

contract foreclosed class arbitration did not fall into "narrow" range of cases where a federal

court may review arbitrability, because such a question "concerns contract interpretation and

arbitration procedures," which arbitrators are "well situated to answer"); John Wiley & Sons,

Inc. v. Livingston, 376 U.S. 543, 546-47 (1964) (holding that, once a court has determined that

the subject matter of the dispute is subject to arbitration, it is for the arbitrator, not the court, to

decide whether procedural prerequisites have been met).

       The Fifth Circuit follows this U.S. Supreme Court precedent, holding repeatedly

that ancillary issues such as arbitrator selection cannot be reviewed until after the arbitration has

been completed.  In Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co., the Fifth Circuit

held that a dispute regarding the arbitrator selection process, even if framed as a request to the

court to enforce the arbitration agreement, could not be heard by the district court until after the

arbitration had been completed.  As the Appeals Court stated:

> Thus, the FAA does not expressly endorse court inquiry into the
> capacity of any arbitrator to serve prior to issuance of an arbitral
> award.  More importantly, *the FAA appears not to endorse court
> power to remove an arbitrator for any reason prior to issuance of
> an arbitral award.*  304 F 3d. at 490 (emphasis added).

The same result is warranted here.  Petitioner asks this Court to remove an arbitrator who has

been in place for several months and who already has moved forward with the pre-arbitration

proceedings.  Macquarie submits that Petitioner's claim is without merit—this arbitrator's

appointment was carefully reviewed and approved twice by the AAA.  But, even if the Court

wanted to consider Petitioner's request for relief, it cannot do so now, prior to the end of the

arbitration.

The Fifth Circuit reiterated this holding in <u>Adam Techs. Int'l S.A. de C.V. v. Sutherland Global Services, Inc.</u>, 729 F.3d 443 (5th Cir. 2013), which involved a plaintiff's attempt to have the district court weigh in on the arbitrator selection process by removing certain arbitrators and appointing another.  The Fifth Circuit affirmed the district court's refusal to do so, stating that the process used to select arbitrators is a procedural issue for the arbitrator, rather than a court, to decide.  More importantly in view of the current posture of this case, the Fifth Circuit also held that a court simply has no authority to consider this issue before the arbitration has concluded:

> [A]t the time [plaintiff] challenged the arbitrator-selection process in the Texas district court, three arbitrators were already empaneled, and no arbitration award had yet been made.  The court had no statutory authority to reach the merits of [plaintiff]'s argument after the arbitration process had proceeded but 'prior to issuance of the arbitral award.'  729 F.3d at 452.

In an apparent attempt to distinguish these dispositive holdings from the facts of this case, the Petition cites to the earlier Fifth Circuit case of <u>Brook v. Peak Int'l, Ltd.</u>, 294 F.3d 668 (5th Cir. 2002).  <u>See</u> Petition at ¶ 2.  Petitioner's citation is not persuasive because the parties in <u>Brook</u> took their dispute with the arbitration process to the court *after* the arbitration award was issued.  The court's statement that the plaintiff "could have sought an order from the district court compelling arbitration before a properly selected arbitrator" before proceeding to arbitration was clearly dicta.  <u>Brook</u>, 294 F.3d at 674.  Moreover, as discussed above, the Fifth Circuit's subsequent holdings state repeatedly that arbitrator selection issues cannot be considered during the pendency of the arbitration.  Dicta from this single decision is simply not persuasive; it has not been—and should not be—followed.  <u>See also</u> <u>Avic International, USA v. Tang Energy Group, Ltd.</u>, 614 F. App'x 218, 220 (5th Cir. 2015) (affirming the district court's

determination that under the FAA, the district court could not consider "objections to the makeup of the arbitration panel" until after the arbitration had been completed).[1]

The Petition represents an improper attempt to convert Section 4 of the FAA into a source of interlocutory judicial review of procedural questions properly decided by the AAA under its discretion and pursuant to the governing arbitration rules.  Petitioner's attempt must fail.  As discussed above, it is well-established in this Circuit that courts are precluded from reviewing such procedural challenges to the arbitration—and in particular, the arbitrator selection process—until after the arbitration proceeding is finished.  Accordingly, the Petition does not allege any claim that can be decided by this Court, and Macquarie's motion to dismiss the Petition for failure to state a claim should be granted.[2]

**B.      Paragraphs 10 and 13 through 20 and Exhibit A Should be Stricken from the Petition**

Under the Federal Rules of Civil Procedure, courts may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The Fifth Circuit holds that a motion to strike should be granted when "the pleading to be stricken has no possible relation to the controversy."  Augustus v. Bd. Of Pub. Instruction of Escambia County,

---

[1]  The Petition's attempt, at Paragraph 36, to set forth general precepts regarding the arbitration process is equally non-persuasive.  The arbitrator selection here was approved by the AAA and done in accordance with its Rules.  But even if the Petitioner is trying to make an inartful equitable argument (which Macquarie disputes), it does not change the result.  See, e.g., Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 941 (4th Cir. 1999) (quoted in Gulf Guar.) ("[F]airness objections should generally be made to the arbitrator, subject only to limited *post-arbitration* judicial review . . . ." (emphasis added)).

[2]  Given the improper and scandalous nature of the Petition's allegations, if the Court grants the motion to dismiss, Macquarie also requests that the Court consider sealing the Petition. Courts have the authority and discretion to seal filings.  See Fed. R. Civ. P. 5.2(d).  Motions to seal are typically granted when necessary to ensure that court records are not used for an "improper purpose," such as "to gratify private spite or promote public scandal."  See Bianco v. Globus Med., Inc., No. 2:12-CV-00147-WCB, 2014 WL 3422000, at *3 (E.D. Tex. July 14, 2014) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978)).  In particular, materials that are "unrelated to the merits of the case" are precisely "the kinds of court materials for which there is not a compelling need for public disclosure," and there is no presumption of disclosure in that setting.  See Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co., No. 2:15-CV-1202-WCB, 2017 WL 434207, at *2 (E.D. Tex. Feb. 1, 2017) (citing cases); see also In re Smith, 656 F.2d 1101, 1106 (5th Cir. 1981) (ordering district court to "strike and/or seal" allegations that were not "necessary, material, or relevant" to the merits).

Fla., 306 F.2d 862, 868 (5th Cir. 1962); see also Dishner v. Universal Health Servs., Inc., No. 3:17-CV-3321-D, 2018 WL 1617844, at *3 (N.D. Tex. Apr. 4, 2018) (citing Augustus) (striking "background fact allegations" that were "not relevant to any specific element" of and/or "too attenuated" to Petitioner's cause of action).

    Motions to strike will also be granted where allegations contained in the pleading are immaterial, impertinent, or scandalous.  See Johnson v. Ashmore, 681 F. A'ppx 345, n.2 (5th Cir. 2017) (in action by borrower alleging that lender's counsel made false representations to him, granting motion to strike allegation that counsel was fired from her law firm because allegation was impertinent to underlying cause of action); Marceaux v. Lafayette City Parish Consolidated Government, 14 F. Supp. 3d 760 (W.D. La. 2014) (granting motion to strike and motion for sanctions because the complaint was filed for an "improper purpose," as evidenced by Petitioner's inclusion of immaterial, impertinent, and scandalous information in its complaint, which contained more than 100 paragraphs that were unrelated to the events involved in the action), aff'd, 614 F. A'ppx 705 (5th Cir. 2015).  Allegations are immaterial and subject to being stricken if they have "no essential or important relationship to the claim for relief or the defenses being pleaded."  Boltex Mfg. Co., L.P. v. Ulma Forja, S. Coop, No. CV H-17-1400, 2018 WL 6622839, at *1 (S.D. Tex. Nov. 28, 2018), report and recommendation adopted sub nom. Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp., No. 4:17-CV-1400, 2018 WL 6618022 (S.D. Tex. Dec. 17, 2018).  Allegations are scandalous, and subject to being stricken, if they improperly cast "derogatory light on someone, most typically on a party to the action."  Id. at *1.

    There can be no doubt that Paragraphs 10 and 13 through 20 should be stricken on the basis that they are immaterial, impertinent, or scandalous.  These allegations include graphic, highly scandalous statements and activities that have no "possible relation" to the narrow

procedural issue at stake:  whether the AAA abided by its own arbitrator selection process.

These allegations are relevant only to the underlying employment dispute, which is in the

exclusive purview of the arbitrator.  Accordingly, these allegations can serve no purpose except

to publicize the underlying employment dispute in flagrant breach of the confidentiality

obligations under the parties' arbitration agreement.  For similar reasons, the terms of the

underlying employment agreement (which includes sensitive and confidential employment terms

and compensation provisions) are also immaterial, and the agreement should be omitted from the

Petition.

Petitioner submits that she included a "general outline" of the underlying

employment dispute to create subject matter jurisdiction.  See Petition, at n.3.  This assertion is

utterly baseless.  First, as discussed above, Paragraphs 10 and 13 through 20 are not a "general

outline" of the underlying employment dispute—they are specific, highly sexualized and

sensationalized allegations.  Second, contrary to Petitioner's contention, the FAA does not create

federal question jurisdiction over this Petition.  As Petitioner herself notes, "[i]t is well-

established that the FAA is not an independent grant of federal jurisdiction."  Smith v. Rush

Retail Centers, Inc., 360 F.3d 504, 505 (5th Cir. 2004).  Moreover, Section 4 of the FAA, relied

upon by Petitioner here, also fails to grant federal jurisdiction as, by its plain terms, it is only

applicable when there is a "failure, neglect or refusal of another to arbitrate under a written

agreement for arbitration."  Here, Macquarie actively participated in good faith in the pending

arbitration before the arbitrator that was selected for the parties by the AAA.

Finally, Petitioner had no need to allege federal question jurisdiction at all

because, as Petitioner acknowledges, the Court has diversity jurisdiction over this action.  See

Petition, at ¶ 7 ("This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because the

parties are completely diverse and the amount in controversy exceeds $75,000…").  The cases cited by Petitioner are in accord.  See Rush Retail Centers, Inc., 360 F.3d at 505 ("In short, for a federal court to enter an order to compel arbitration under § 4, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue."); Oteeva, LP v. X-Concepts LLC, 253 F. App'x 349, 351 (5th Cir. 2007) ("Because of the absence of adequate diversity allegations and the lack of sufficient evidence of diversity in the record before us, we conclude that the plaintiffs have failed to satisfy their burden of establishing federal jurisdiction.").  Petitioner pled, and there in fact exists, diversity of citizenship between the parties.  See Petition, at ¶¶ 10-11 (noting that Petitioner is a citizen of the State of Texas and Macquarie is "organized under the laws of Delaware"[3]).  Accordingly, her assertion that she needed to include the graphic details of the underlying employment dispute is nothing more than mere pretext for her desire to publicize the allegations for an improper purpose.

Macquarie vehemently denies the allegations concerning Petitioner's employment, but that dispute is for a later date and a different forum, before an arbitrator, in accordance with the parties' agreement.  Macquarie should not have to respond in a public forum to inflammatory allegations that have no bearing on the narrow procedural issue in dispute.  This is especially true where, as here, the parties contractually *agreed* that any dispute between them would be litigated via a "strictly confidential" arbitration.  Because these allegations have "no possible relation to the controversy" and were clearly filed for the improper purpose of causing Macquarie such prejudice, Paragraphs 10 and 13 through 20 and Exhibit A should be stricken from the Petition.

---

[3] As set forth above, Macquarie is a series of a Delaware statutory trust with its principal place of business in Philadelphia, Pennsylvania.

### C.      Macquarie is Entitled to Recover its Costs and Attorneys' Fees in Connection with this Motion

Any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy *personally* the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927 (emphasis added).  See, e.g., Ratliff v. Stewart, 508 F.3d 225, 232 (5th Cir. 2007) (noting that Section 1927 "is concerned with 'baseless filings' that 'burden[] courts and individuals alike with needless expense and delay'").  The imposition and quantification of Section 1927 sanctions are within the "sound discretion" of the court imposing them.  See Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc., 38 F.3d 1414, 1417 (5th Cir. 1994) (affirming imposition of Section 1927 sanctions upon district court's finding that Rule 60(b)(6) motion "unreasonably and vexatiously multiplied the proceedings").  Courts also have inherent power to impose sanctions against litigants or lawyers who engage in bad faith conduct.  See Sheshtawy v. Conservative Club of Houston, Inc., No. 4:16-CV-733, 2016 WL 10880233, at *6 (S.D. Tex. Dec. 14, 2016) (finding bad faith where motion for new trial was filed for "improper purposes").

For reasons set forth at length above, Petitioner's counsel clearly acted unreasonably, vexatiously, and in bad faith in filing the Petition to Compel Arbitration.  First, as described above, Fifth Circuit law is clear that this Court does not have jurisdiction over the issue of arbitrator selection.  Second, there was simply no legitimate need to mention the graphic and highly scandalous allegations concerning the underlying employment dispute when Petitioner is merely asking this Court to review the AAA's arbitrator selection process.  Clearly, Petitioner's counsel was motived by the improper purpose of embarrassing Macquarie in a public forum by publicizing the more salacious allegations in the employment dispute.  These actions were a flagrant breach of the confidentiality provisions of the parties' arbitration agreement and

an abuse of the judicial process.  This bad faith conduct is further evidenced by counsel's

unreasonable refusal of Macquarie's proposal to characterize the AAA proceeding as an

"employment dispute."  <u>See</u> Exhibits 2 and 3.  Had Petitioner's counsel merely abided by the

terms of the Arbitration Agreement, and omitted the specific allegations of the employment

dispute (which are wholly impertinent and immaterial to the AAA arbitrator selection process),

there would have been no need for a motion to strike and Petitioner's purported "privacy

concerns" would have been allayed.  Macquarie respectfully requests that this Court allow

Macquarie to recover its attorneys' fees and costs in connection with counsel's vexatious,

unreasonable, and bad faith conduct.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Macquarie respectfully requests that this Court grant its

Motion to dismiss the Petition.  Macquarie also requests that the Court enter an Order striking

Paragraphs 10 and 13 through 20 and Exhibit A of (and seal) the Petition and awarding a

monetary sanction to Macquarie from Petitioner's counsel for his vexatious, unreasonable, and

bad faith conduct.

Respectfully Submitted,

/s/ Linda C. Schoonmaker
Linda C. Schoonmaker
Texas Bar No. 17806300
lschoonmaker@seyfarth.com
Brian A. Wadsworth
Texas Bar No. 24075231
bawadsworth@seyfarth.com
SEYFARTH SHAW, LLP
700 Milam Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 225-2300
Facsimile: (713) 225-2340

OF COUNSEL:

Ellen Rosen Rogoff, Esq. (pro hac vice application pending)
Jeffrey A. Lutsky, Esq. (pro hac vice application pending)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA  19107-7018
Telephone: (215)56-8000
Facsimile: (215) 564-8120

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record, as listed below, via the court's electronic filing system, on October 24, 2019:

> Charles A. Sturm, Esq.
> 723 Main Street, Suite 330
> Houston, TX 77002
> csturm@sturmlegal.com

/s/ Linda C. Schoonmaker
Linda C. Schoonmaker