IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In the matter of the Arbitration between: | § | |
| | § | |
| JANE DOE, | § | |
| | § | |
|     *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-cv-04112 |
| | § | |
| MACQUARIE INVESTMENT | § | |
| MANAGEMENT BUSINESS TRUST | § | |
| | § | |
|     *Respondent*. | § | |

**PETITIONER'S RESPONSE TO MACQUARIE'S MOTION
TO DISMISS, TO STRIKE CERTAIN "SCANDALOUS"
ALLEGATIONS OF THE PETITION AND FOR SANCTIONS**

Macquarie's motion should be denied. The Federal Arbitration Act expressly provides that where a method for arbitrator appointment is set out in the arbitration agreement, the agreed upon method of appointment "*shall be followed*." 9 U.S.C. § 5 (emphasis added). When that specific method is not followed, Section 4 of the FAA expressly requires a court to compel arbitration in accordance with the terms of the agreement upon the motion of either party. 9 U.S.C. § 4.

There is no dispute that the contractually-agreed *method* of arbitrator appointment was not followed. Thus, the Court has jurisdiction to hear Petitioner's claim.

**1. Factual History.**

Petitioner is a former employee of Macquarie. (Pet'r's Compl., ¶ 20.) She complained to Macquarie when a co-worker earnestly suggested that she "suck her customer's cocks" to advance her career. (*Id*., ¶ 16.) She complained to Macquarie when her supervisor took all of the other employees under his supervision to a strip club and one of those employees later tried to sexually assault her. (*Id*.)

In retaliation for making those complaints, Macquarie concocted a bogus excuse to justify her termination. (*Id.*, ¶ 18.) The company groomed the coworker she accused of sexual assault for a promotion, despite the fact that it said it believed her allegations against him. (*Id.*, ¶ 17.) Instead of disciplining her two coworkers, it fired her. (*Id.*, ¶ 20.)

Petitioner's employment agreement with Macquarie contains an arbitration provision ("the Arbitration Agreement"), so she filed a claim. (*Id.*, ¶ 3.) The Agreement provides that any "arbitration will be conducted under the Employment Dispute Resolution Rules of AAA," including their "procedures for the joint selection of an impartial arbitrator," and expressly incorporates those rules into the Agreement. (*Id.*, ¶ 3; *see also* Arbitration Agreement, Ex. A to Pet'r's Compl., at 11.)

The AAA's Employment Arbitration Rules and Mediation Procedures, in turn, provide that the AAA will follow this specific procedure:

- "The AAA shall send simultaneously to each party a letter containing an identical list of names of persons chosen from the Employment Dispute Resolution Roster";
- "If the parties are unable to agree upon an arbitrator, each party to the dispute shall . . . strike names objected to, number the remaining names in order of preference, and return the list to the AAA;" and then,
- "*From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve.*"

AAA Employment Arbitration Rules and Mediation Procedures, Rule 12.c.i-iii (hereafter "AAA Employment Rules") (emphasis added).[1]

The AAA did not follow these rules, a fact that Macquarie does not dispute. (Macquarie's Mot. at pp. 4-5, 7-10.) The AAA did not invite the acceptance of an arbitrator to serve "in

---

[1] Available online at https://www.adr.org/sites/default/files/Employment%20Rules.pdf.

accordance with the designated order of mutual preference," as it was required to do by AAA Rule 12.c.iii, and thus by extension the Employment Agreement. (Pet'r's Compl., ¶ 20.) Because the specific, contractually-agreed method for arbitrator selection was not followed, Petitioner filed this lawsuit seeking an order directing that the "arbitration proceed in the manner provided for in such agreement." *See* 9 U.S.C. § 4.

**2. The Motion to Dismiss Should be Denied.**

Macquarie claims that the Court does not have jurisdiction to hear Petitioner's claim. (Macquarie's Mot. at p. 7.) But Macquarie's argument is contradicted by the plain language of the Federal Arbitration Act:

- Section 5 of the FAA—in the very first sentence, in fact—states, "If in the agreement provision be made for a *method of naming or appointing an arbitrator* or arbitrators or an umpire, *such method shall be followed*." 9 U.S.C. § 5 (emphasis added).

- When that specific method is not followed, section 4 of the FAA provides that an aggrieved party may petition a United States District Court (that would otherwise have jurisdiction over the underlying dispute) "for an order directing that such arbitration proceed in the manner provided for in such agreement," and that "[i]f the jury find that an agreement for arbitration was made in writing and that *there is a default in proceeding thereunder*, the court shall make an order summarily directing the parties to proceed with the arbitration *in accordance with the terms thereof*." 9 U.S.C. § 4 (emphasis added).

And it is contradicted by the case law:

- It is contradicted by Supreme Court authority. *See, e.g., AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748-49 (2011) (stating that the "principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms," observing that "§ 4 of the FAA requires courts to compel arbitration in accordance with the terms of the agreement upon the motion of either party to the agreement," and that "in light" of that section and others, it has "held that parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit *with whom* a party will arbitrate its disputes") (internal quotations, citations and brackets omitted).

- It is contradicted by Fifth Circuit authority. *See Brook v. Peak Int'l, Ltd.,* 294 F.3d 668, 673-74 (5th Cir. 2002) (stating that because the "AAA flouted the prescribed procedures" for arbitrator selection outlined in the employment agreement—the precise fact pattern in this case—the petitioner there "*could have sought an order from the*

3

> *district court compelling arbitration before a properly selected arbitrator* pursuant to sections 4 and 5 of the FAA.") (emphasis added).

- And it is contradicted by authority even from another court in this same district. *See, e.g., Baker Hughes Inc. v. BNY Mellon Capital Markets, LLC*, No. H-09-CV-1466, 2010 WL 985826, * 7 (S.D. Tex. Mar. 16, 2010) (granting a 12(b)(6) motion to dismiss a petition to compel arbitration, but only because "of the fact that no precise agreement exists among the parties *explicitly* delineating a particular method for naming and/or appointing arbitrators in this case," and stating that the motion would have been denied if the petitioner had demonstrated that "a failure to follow a *specific* method for naming and/or appointing arbitrators as set forth in the parties' arbitration agreement has occurred").

Instead of citing the relevant sections of the FAA, or a single Supreme Court case supporting its position, Macquarie instead cites to a few inapposite cases where the *method* for arbitrator selection provided in the arbitration agreement was followed. For example, in *Gulf Guarantee Life Insurance Co. v. Connecticut General Life Insurance Co.*, the Fifth Circuit rejected (1) an attempt to recover monetary damages based on an alleged violation of the arbitrator selection process, and (2) a challenge to the *qualifications* of a party-appointed arbitrator because the appointment complied with the *method* for selection in the arbitration agreement. *See* 304 F.3d 476, 480, 485-90 (5th Cir. 2002).

In *Adam Technologies International S.A. de C.V. v. Sutherland Global Services., Inc.*, 729 F.3d 443 (5th Cir. 2013), the other case cited by Macquarie, defendant Sutherland demanded arbitration with respect to a dispute with plaintiff Adam, to be administered by the International Centre for Dispute Resolution ("ICDR"). *See id.* at 444-45. Pursuant to their agreement, both Sutherland and Adam appointed arbitrators who would then appoint a third arbitrator, but pursuant to its rules the ICDR disqualified Adam's arbitrator and then appointed a replacement after Adam failed to do so despite having "received two extensions of the deadline to appoint." *Id.* at 445. The arbitrators selected by Sutherland and by the ICDR then selected the third arbitrator, and a hearing date was set. *Id.*

Adam sought relief in district court, requesting reinstatement of its disqualified arbitrator and re-selection of a third arbitrator. *See id*. at 447. The district court denied that request and the Fifth Circuit affirmed.

First, the Fifth Circuit found no "lapse in time in the naming of the arbitrator or ... other mechanical breakdown in the arbitrator selection process" that might warrant judicial intervention. *See id*. at 451 (citing BP Exploration, 689 F.3d at 491-92). The court found no "mechanical breakdown" because Adam was at fault for failing to timely appoint its arbitrator, and no "lapse" because an arbitration panel had in fact been empaneled by the ICDR. *See id*. Second, the Fifth Circuit declined to construe Adam's arguments as seeking enforcement of the contractual "method of naming or appointing an arbitrator." *Id*. at 452. Rather, the Fifth Circuit held that the ICDR's disqualification of Adam's arbitrator and appointment of a replacement was consistent with and pursuant to the arbitration agreement because the parties had incorporated the ICDR's rules by reference, and they were followed. *See id*.

Every other case cited by Macquarie in its motion can similarly be distinguished. None involve the critical fact that exists here: the failure to follow a *specific method* for arbitrator selection required in the arbitration agreement.

### 3. No Allegations In The Petition Should Be Stricken.

None of the allegations in the Petition are "scandalous." Petitioner did not name the person who assaulted her or the name of any other Macquarie employee for that matter. She provided no details of the assault. There are no gory details of anything. If Macquarie is embarrassed and ashamed by the broad descriptions of its conduct, then it should make necessary and long-overdue reforms to its business to prevent that conduct—not attack the women who simply reveal it.

Nor are any of the allegations "impertinent." Petitioner included a general outline of her

5

underlying claims because she was required to do so: it is her burden to prove that the Court would otherwise have subject matter jurisdiction over the underlying claims. *See Smith v. Rush Retail Centers, Inc.*, 360 F.3d 504, 505 (5th Cir. 2004) ("It is well established that the FAA is not an independent grant of federal jurisdiction."); *see also, e.g., Oteeva, LP v. X-Concepts LLC*, 253 F.App'x 349, 351 (5th Cir. 2007) ("Because of the absence of adequate diversity allegations and the lack of sufficient evidence of diversity in the record before us, we conclude that the plaintiffs have failed to satisfy their burden of establishing federal jurisdiction.") (emphasis added).

**4. Sanctions Are Not Justified.**

Macquarie's request for sanctions is frivolous. There is no evidence that Petitioner or her counsel filed this lawsuit in bad faith, and there is no evidence that the filing was motivated by an improper purpose. To the contrary, the law fully supports the relief she requests, and her lawsuit was only necessary because of Macquarie's refusal to comply with its own arbitration agreement. Accordingly, Macquarie's request for sanctions should be denied.

**5. Conclusion.**

The Court has jurisdiction to hear Petitioner's claim. *See* 9 U.S.C. § 4. Accordingly, Macquarie's motion to dismiss should be denied. Its other requests—for sanctions and to strike allegations in the petition—are frivolous and should also be denied.

Respectfully submitted,

STURM LAW, PLLC

*/s/ Charles A. Sturm*
CHARLES A. STURM
csturm@sturmlegal.com
*Attorney in Charge*
Texas Bar No. 24003020
Federal Bar No. 21777
712 Main Street, Suite 900
Houston, Texas 77002
(713) 955-1800 [Telephone]
(713) 955-1078 [Facsimile]



## **CERTIFICATE OF SERVICE**

I certify that this document was served on all counsel of record through the Electronic Case Filing ("ECF") System on November 15, 2019.[2]

*/s/ Charles A. Sturm*
Charles A. Sturm

---

[2] Petitioner filed this response shortly after midnight on November 14 due to technical problems with her counsel's office's computer software.